******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GAD LAVY *v.* MICHELE BROWN LAVY
(AC 40936)

Prescott, Elgo and Harper, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the postjudgment order of the trial court opening and reforming the dissolution judgment after the trial court found that the plaintiff's failure to disclose certain assets on his financial affidavit constituted material omissions that triggered certain remedial measures set forth in the parties' separation agreement. The separation agreement, which had been incorporated into the dissolution judgment, provided, inter alia, that in the event of a material omission in either party's financial affidavit, the other party had the right to open and reform the judgment, and would be entitled to receive 75 percent of the undisclosed asset's value, as measured at the time of dissolution, and reasonable legal fees from the other party. The trial court granted the defendant's motion to open and reform the dissolution judgment, in which she claimed that the plaintiff had failed to disclose a certain bank account and a condominium apartment that he owned in Jerusalem, Israel. The trial court ordered the plaintiff to pay the defendant 75 percent of the value of those assets at the time of the dissolution judgment, and awarded the defendant statutory (§ 37-3a [a]) prejudgment and postjudgment interest, as well as costs and reasonable attorney's fees. *Held*:

1. The trial court properly determined that the plaintiff's failure to disclose the bank account and Jerusalem property on his financial affidavit constituted material omissions in violation of the separation agreement:

a. The plaintiff could not prevail on his claim that his failure to disclose the bank account and Jerusalem property did not constitute material omissions because the defendant knew about them at the time of the dissolution judgment: the trial court made no findings that the defendant had knowledge of the undisclosed assets during the negotiation of the separation agreement or at the time the dissolution judgment was rendered, as the court was free to reject evidence that she knew of the assets, and the plaintiff did not identify any language in the separation agreement that would exempt a party from the duty to disclose an asset on a financial affidavit if the other party was aware of its existence; moreover, the court found that although the defendant had received conflicting and unverified reports at the time of the dissolution judgment that raised the possibility that the plaintiff owned undisclosed real property, it was not until later that she received more definitive proof of the existence of that property, the court credited her testimony that although she previously had opened the bank account in the plaintiff's name, she had nothing further to do with the account and was not aware as of the date of dissolution that it existed, and the duty of full disclosure was also necessary for the court to evaluate the reasonableness of the parties' agreement.

b. The plaintiff's claim that the trial court inflated the significance of the omitted assets by comparing their value to the total value of disclosed assets in the same asset category was unavailing; the court's discussion of the relative value of the assets did not render its determination that the plaintiff's nondisclosures were material omissions legally or logically incorrect or unsupported by the record, even if the court did not use the proper yardstick to measure the materiality of his omissions, the omission of assets valued at 1.5 percent of a $16 million marital estate was not de minimis or immaterial, and to suggest that the failure to disclose nearly $240,000 in assets would not have had great consequences to the separation agreement would be to suggest that the defendant would have been content to walk away from her equitable share of those assets.

c. The trial court's finding that the plaintiff knew about the omitted bank account was not clearly erroneous; there was evidence demonstrating that the plaintiff was aware at the time of the dissolution judgment

that a savings account had been opened in his name, the plaintiff never sought to close the account, and even if he was not aware of the status of the account at the time of the dissolution or the balance of the funds in the account, he could have determined such information through due diligence and disclosed it on his financial affidavit.

2. The trial court properly awarded the defendant prejudgment interest; there was no merit to the plaintiff's assertion that he was denied reasonable notice and an opportunity to present a defense regarding the defendant's request for prejudgment interest, which was made in her posthearing brief, as the plaintiff had an opportunity to respond to that claim in his posthearing reply brief, and given the court's determination that the plaintiff was unjustified in failing to disclose assets, which resulted in a failure to distribute to the defendant at the time of the dissolution her equitable share of those assets under the separation agreement, an award of prejudgment interest properly was within the discretion of the court.

3. The trial court did not violate the rule of practice (§ 61-11) that provides for an automatic appellate stay by awarding the defendant postjudgment interest after the plaintiff filed this appeal, as the court's decision could not reasonably be viewed as effectuating the judgment on appeal: although the plaintiff claimed that an award of interest under § 37-3a is part of the mechanism for the statutory (§ 52-350f) enforcement of a money judgment, the clause in § 52-350f that refers to statutory interest clarifies that interest awarded is included in the money judgment that may be enforced, and no language in § 52-350f, from which § 61-11 is derived, equates obtaining an award of interest with an action to enforce a money judgment, which § 52-350f expressly limits to the execution or foreclosure of a lien; moreover, the plaintiff was able to amend his appeal to challenge the additional award, the court's decision did not diminish or hamper his appellate rights with respect to the remainder of the judgment on the motion to open, and although the court's decision increased the damages the defendant would be entitled to collect, she cannot secure payment from the plaintiff by executing on the judgment until the appeal is disposed and the automatic stay has expired.

Argued January 9—officially released May 21, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Stanley Novack*, judge trial referee, rendered judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Malone, J.*, denied the plaintiff's motion to strike and request to revise; subsequently, the court, *Emons, J.*, approved the stipulation of the parties to conduct certain discovery; thereafter, the court, *Heller, J.*, granted the defendant's motion to open and reform the judgment, and the plaintiff appealed to this court; subsequently, the court, *Heller, J.*, granted the defendant's motion for postjudgment interest, and the plaintiff filed an amended appeal. *Affirmed.*

*Alexander J. Cuda*, for the appellant (plaintiff).

*Eric M. Higgins*, with whom, on the brief, was *Sarah Gleason*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. The plaintiff, Gad Lavy, appeals from the judgment of the trial court granting the motion of the defendant, Michele Brown,[1] to open and reform the parties' marital dissolution judgment because the plaintiff failed to disclose on his financial affidavit two marital assets: a savings account with First Niagara Bank, N.A., formerly known as NewAlliance Bank (Niagara account), and real property located in the Middle East (Jerusalem property). The plaintiff later amended this appeal to challenge the court's subsequent decision to grant the defendant's motion for an award of postjudgment interest. On appeal, the plaintiff claims that the court improperly (1) found that his failure to disclose the Niagara account and Jerusalem property on his financial affidavit constituted material omissions that triggered remedial measures set forth in the parties' separation agreement, which was incorporated by reference into the judgment of dissolution, (2) awarded the defendant prejudgment interest despite her having requested such relief for the first time in her posthearing brief, and (3) awarded the defendant postjudgment interest during the pendency of the appeal, purportedly in violation of the automatic appellate stay. We reject the plaintiff's claims and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history, which were found by the court or are uncontested, are relevant to our resolution of the plaintiff's claims. The court dissolved the parties' marriage on June 14, 2011, following an uncontested hearing. The judgment of dissolution incorporated by reference the parties' separation agreement. The parties attached to the separation agreement financial affidavits dated June 14, 2011.

In article XXI, paragraph 21.1, of the separation agreement, the parties represented that their attached financial affidavits were true and accurate. They further stated that they had relied on the facts set forth in those financial affidavits in reaching the terms and financial arrangements set forth in the separation agreement. Paragraph 21.1 further provides: "Each party expressly represents that there has been no substantial change in circumstances to [either party] since the date of said affidavits and that said affidavits fully, fairly and accurately [sets] forth the existing assets, liabilities, and income of the parties. The parties expressly represent to each other that they do not own any other assets nor are any assets being held by a third party for the benefit of either [party], except those described and divided under the terms of this agreement and the parties' respective financial affidavits. Each party represents that he or she relied on the financial affidavits and voluntary disclosures and representations made by the other party in the course of this dissolution of marriage action for purposes of arriving at the terms

of this agreement. The parties further acknowledge that each has a fiduciary duty to the other to make a full and fair disclosure of his or her financial circumstances, including all assets, to the other in connection with this proceeding. In the event of a material omission or misstatement by either party in his or her affidavit, the other party shall have the right to rescind this [a]greement and reopen and reform any judgment entered in the pending action incorporating the terms hereof." Article XXI of the separation agreement further provides that if either party made a material omission of an asset on his or her financial affidavit, the other party would be entitled to receive 75 percent of the undisclosed asset's value measured at the time of dissolution. The party who failed to disclose an asset also would be liable for the other party's "reasonable legal fees, expert fees, and court costs."

On August 9, 2011, the defendant filed a motion to open and reform the June 14, 2011 judgment of dissolution, invoking article XXI of the separation agreement. According to the defendant, the plaintiff had failed to disclose on his June 14, 2011 financial affidavit the existence of the Jerusalem property, which she described as a condominium apartment and storeroom. She also claimed there was a "likelihood beyond mere suspicion that the plaintiff has failed to disclose additional assets as yet unknown to the defendant" because his financial affidavit did not disclose any bank accounts in Israel or other means by which the plaintiff could pay the taxes and costs associated with owning the condominium. The defendant asked the court to open the dissolution judgment for the purpose of conducting limited discovery and, if necessary, to distribute any undisclosed property in accordance with the separation agreement, including awarding reasonable attorney's fees and costs.

In response to the defendant's motion to open, the plaintiff initially filed a motion to dismiss asserting insufficiency of process, which he later withdrew. He subsequently filed a motion to strike, challenging the legal sufficiency of the defendant's motion, and a request to revise. The court denied both motions. The defendant never filed a written opposition addressing the merits of the motion to open.

On December 14, 2011, the defendant amended her motion to open and reform the dissolution judgment, asserting that, since filing her initial motion, she had learned of additional grounds for granting the motion. Specifically, in addition to reasserting the allegations in her initial motion to open, the defendant asserted that the plaintiff had failed to disclose the existence of the Niagara account, which she described as a savings account that had been open for at least three years and, thus, existed at the time the plaintiff submitted his June 14, 2011 financial affidavit.

The parties eventually executed a stipulation in which they agreed to have the court open the dissolution judgment for the limited purpose of conducting discovery. The stipulation expressly provided that it was "not an admission of any misrepresentation or fraud on the part of either party with respect to the representations made at the time of [j]udgment." The court approved the stipulation and made it an order of the court on November 5, 2012.

On June 15, 2016, the plaintiff filed a motion in which he asserted that the defendant had opened the Niagara account in the plaintiff's name, without his knowledge, using her own funds, and, thus, she had a duty to disclose the Niagara account on her financial affidavit. According to the plaintiff, the defendant's failure to disclose the existence of the account entitled him to an award of legal fees and costs under the terms of the separation agreement.

The court conducted an evidentiary hearing on the defendant's motion to open, as amended, on November 16 and 17, 2016. At that time, the court also considered the plaintiff's motion for an award of costs and attorney's fees. The parties submitted posthearing memoranda and reply memoranda. The court later granted a request by the defendant for additional oral argument, which it heard on April 11, 2017.

The court issued a memorandum of decision on August 7, 2017, granting the defendant's motion to open and reform the dissolution judgment. With respect to the Jerusalem property, the court found that the plaintiff's brother had conveyed the property to him for no consideration and that a title abstract reflecting the conveyance had been recorded in the Jerusalem land registry on January 27, 1999.[2] The plaintiff remained the record owner of the Jerusalem property at the time of the dissolution judgment. Although the plaintiff testified that he had not included the Jerusalem property on his financial affidavit because he did not know he owned the property, the court did not find that testimony credible. Rather, the court credited the testimony of the defendant's real estate expert, Attorney Yoram Hacohen,[3] who opined that before a conveyance for no consideration could be recorded on the land records in Jerusalem, the grantee, in this case the plaintiff, would have been required to sign a number of legal documents.[4] The court found that the fair market value of the Jerusalem property, measured in United States dollars at the time of the dissolution judgment, was $146,379. The court further found that the plaintiff's failure to include the Jerusalem property on his June 14, 2011 financial affidavit was a material omission.[5]

The court made the following findings relative to the *defendant's* knowledge of the Jerusalem property at the time of the dissolution judgment. "The Jerusalem

property came to [the defendant's] attention as a result of her efforts to locate property that was owned by [the plaintiff] in Israel. . . . [I]n early 2011, she and her counsel in the dissolution action had retained an attorney in Israel to find out whether [the plaintiff] owned any property there. That attorney engaged a private investigator, who advised them that [the plaintiff] did not own any real property in Israel. Shortly before the uncontested dissolution hearing, however, [the defendant's] boyfriend, who was also a lawyer, hired a different attorney in Israel. That attorney reported that [the plaintiff] owned a condominium in Jerusalem and forwarded a copy of a document from the land records.

"Despite the conflicting, unverified reports that she had received regarding a possible asset belonging to [the plaintiff] that he had not disclosed, [the defendant] determined to proceed with the uncontested dissolution hearing on June 14, 2011. . . . [S]he did so because of the tremendous distrust and acrimony that existed between the parties at that time. She was afraid that if she did not go ahead with the uncontested divorce in June, 2011, that [the plaintiff] would deny her a get— a divorce under Jewish religious law—and thus prevent her from remarrying in the Jewish faith. She also believed that she would have recourse under article XXI of the June, 2011 separation agreement if she later established that [the plaintiff] owned property in Israel which was not reflected on his June 14, 2011 financial affidavit."

Regarding the Niagara account, the court found that the account was opened in July, 2008, with an initial deposit of $89,146.50. The balance of the Niagara account as of April 28, 2011, was $92,432.[6] The court further found that, although the plaintiff owned the Niagara account on the date of entry of the dissolution judgment, he failed to disclose that account on his financial affidavit, and this constituted a material omission under the separation agreement.[7] The plaintiff testified that, as with the Jerusalem property, he did not know that the account existed. The court, however, did not credit this assertion.

The court found that the defendant was the person who originally had funded the Niagara account with money from her office.[8] The defendant opened the Niagara account in the plaintiff's name, in trust for the parties' son. The plaintiff signed the original documents necessary to open the account in two places. The defendant never signed the account-opening documents, never deposited any additional money into the Niagara account after the initial deposit, and never made any withdrawals or had anything to do with the account after it was opened. Although the plaintiff's name appeared on the bank account statements, the defendant's office address was listed on the statement as the depositor's address rather than the plaintiff's office

address. According to the defendant and her office manager, however, no statements were ever delivered to her office.

With respect to the receipt of banking statements and other correspondences relative to the Niagara account, the court made the following additional findings: "From July, 2008, when [the Niagara account] was opened, through the parties' divorce in June, 2011, [the defendant's] office was at 999 Summer Street, suite 302, and [the plaintiff's] office was two buildings away, at 1275 Summer Street, in Stamford. Counsel for [the defendant] suggested that [the Niagara account] statements and [other forms] were simply delivered to [the plaintiff] at his office on the same street. The plaintiff denied receiving [the Niagara account] statements or any [other forms] from the bank." The court did not expressly resolve the issue regarding the delivery and receipt of the bank statements, but credited the defendant's testimony that she was not aware that the Niagara account still existed as of the date of entry of the dissolution judgment, and that she first learned that it remained open when an escheat letter from the bank, addressed to the plaintiff, was mailed to her office address in November, 2011.

On the basis of its findings that the plaintiff had failed to disclose both the Jerusalem property and the Niagara account on his June 14, 2011 financial affidavits, and that the failure to disclose those assets qualified as material omissions under the terms of the separation agreement, the court ordered the plaintiff to pay the defendant an additional $179,109, which represented 75 percent of the value of the undisclosed assets at the time of the dissolution judgment. The court also awarded the defendant prejudgment interest from the date of the dissolution judgment at the annual rate of 5 percent or $55,141, for a total of $234,250. Moreover, the court determined that the defendant was entitled to costs and reasonable attorney's fees totaling $194,123.76. It denied the plaintiff's motion for attorney's fees and costs. The plaintiff filed a motion to reargue, which the court denied. The plaintiff filed the present appeal on October 11, 2017.

On August 16, 2017, the defendant filed a motion asking the court for an award of postjudgment interest. She later filed a memorandum of law in support of the motion. The plaintiff did not file a written objection or memorandum of law in opposition to the defendant's motion. The court heard argument on the defendant's motion on February 26, 2018. On June 11, 2018, the court issued a decision granting the defendant's motion and awarding postjudgment interest at an annual rate of 5 percent. The plaintiff amended the present appeal, challenging the postjudgment interest award. Because briefs already had been filed in the initial appeal, this court granted permission to file supplemental briefs

addressing the issue in the amended appeal. See Practice Book § 61-9. Additional facts will be set forth as needed.

I

We begin with the plaintiff's claim that the court improperly found that he made material omissions on his financial affidavit in violation of the separation agreement by failing to disclose the Niagara account and Jerusalem property. The plaintiff essentially raises three arguments in support of this claim. First, he argues that, because the defendant knew about the Niagara account and the Jerusalem property at the time of the dissolution judgment, their nondisclosure on his financial affidavit would not have affected her decision-making process and, therefore, his failure to disclose those assets could not have constituted material omissions.[9] Second, he argues that his nondisclosure of the Niagara account and the Jerusalem property had no "real importance or cause[d] great consequences to the overall separation agreement of the parties" and that the court overvalued those assets in determining whether their nondisclosure constituted material omissions. Third, the plaintiff argues that the court should not have found that his failure to disclose the Niagara account was a material omission because there was no evidence that the plaintiff knew the Niagara account existed at the time of the divorce. We are not persuaded by these arguments and conclude that the court properly determined on the basis of the record presented that the plaintiff's failure to disclose the assets in question constituted material omissions.

The general standard of review applicable to a motion to open a judgment is well settled. "We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . [O]ur review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Reville* v. *Reville*, 312 Conn. 428, 440, 93 A.3d 1076 (2014). In applying our abuse of discretion standard, "[t]he court's factual findings will not be disturbed unless there is either no support for them in the record, or, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Rheaume* v. *Rheaume*, 156 Conn. App. 766, 774, 115 A.3d 1116 (2015). It bears repeating that "[j]udicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and

could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action. . . . Generally, we will not overturn a trial court's division of marital property unless [the court] misapplies, overlooks, or gives a wrong or improper effect to any test or consideration [that] it was [its] duty to regard." (Citation omitted; internal quotation marks omitted.) *O'Brien* v. *O'Brien*, 326 Conn. 81, 122, 161 A.3d 1236 (2017). "[T]he weight to be given the evidence and the credibility of the witnesses are within the sole province of the trial court. . . . The trial court has the unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us." (Internal quotation marks omitted.) *McRae* v. *McRae*, 129 Conn. App. 171, 180, 20 A.3d 1255 (2011).

A

We first address the plaintiff's argument that his failure to disclose the Niagara account and Jerusalem property did not constitute "material omissions" as that phrase is used in paragraph 21.1 of the parties' separation agreement because the defendant knew about the existence of the undisclosed assets at the time of the dissolution judgment. According to the plaintiff, because the defendant knew about the undisclosed assets prior to the dissolution judgment, his failure to disclose those assets on his financial affidavit could not have affected her decision-making process with respect to the financial orders in the separation agreement. In other words, the plaintiff contends that the defendant's predissolution knowledge of the undisclosed assets rendered their omission from his financial affidavit immaterial. We are not persuaded.[10]

Our rules of practice require that "at the time a dissolution of marriage or civil union, legal separation or annulment action . . . is scheduled for a hearing, each party shall file . . . a sworn statement . . . of current income, expenses, assets and liabilities." Practice Book § 25-30. It is well settled that, in family relations matters, parties have an important and necessary obligation, both to the court and to each other, to be fulsome and honest regarding their financial disclosures because, in doing so, they help to reduce or eliminate the need for extensive financial discovery and the resulting inefficiencies and delays, "and will thereby help to preserve a greater measure of the . . . marital assets for the support of all of the family members." *Billington* v. *Billington*, 220 Conn. 212, 222, 595 A.2d 1377 (1991).

In *Billington*, the court emphasized the heightened duty that parties have for full and frank disclosure on financial affidavits submitted in dissolution actions, and concluded that imposing a requirement on the opposing

party to discover nondisclosures or other violations would be inconsistent with that duty. The court noted: "A court is entitled to rely upon the truth and accuracy of sworn statements . . . and a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding. . . . These sworn statements have great significance in domestic disputes in that they serve to facilitate the process and avoid the necessity of testimony in public by persons still married to each other regarding the circumstances of their formerly private existence. . . . Thus, the requirement of diligence in discovering fraud is inconsistent with the requirement of full disclosure because it imposes on the innocent injured party the duty to discover that which the wrongdoer already is legally obligated to disclose." (Citations omitted; internal quotation marks omitted.) Id., 219–20.

Accordingly, it is the duty of the party who owns an asset to disclose it on his or her financial affidavit. These same principles were incorporated by the parties into article XXI of their separation agreement, in which they expressly acknowledge that they each (1) owed "a fiduciary duty to the other to make a full and fair disclosure of his or her financial circumstances, including all assets, to the other in connection with this proceeding," and (2) "relied on the financial affidavits and voluntary disclosures and representations made by the other party in the course of this dissolution of marriage action for purposes of arriving at the terms of this agreement."

The plaintiff nevertheless argues on appeal that the defendant knew about the Jerusalem property and the Niagara account prior to the dissolution and that her knowledge rendered his nondisclosure of the assets on his financial affidavit far less significant. Her knowledge, he contends, made it unlikely that the nondisclosure affected her ability to negotiate the parties' settlement agreement, particularly with respect to ensuring that she received an equitable distribution of the marital assets.

The plaintiff's argument fails, however, because there are no findings by the court that the defendant had knowledge of the undisclosed assets during negotiation of the separation agreement let alone at the time the dissolution judgment was rendered. Whether the defendant had knowledge of the undisclosed assets prior to the dissolution judgment was a factual question for the trial court, and the court was free to reject evidence that the defendant knew of the assets.

With respect to the Jerusalem property, the court found only that the defendant had received "conflicting" and "unverified reports" that raised the possibility that the plaintiff had real property that he had not disclosed to the defendant. The court also credited the defen-

dant's testimony that she agreed to the divorce despite her suspicions because she was concerned that, given the acrimonious nature of the parties' relationship, if she delayed the divorce proceedings in order to investigate further, the plaintiff might deny her a "get,"[11] and that she knew she could take advantage of article XXI of the separation agreement if she was able later to establish that the plaintiff owned additional real property. Accordingly, the record supports only a conclusion that the defendant was aware at the time of dissolution of the *possibility* that the plaintiff owned undisclosed real property. It was not until later that the defendant received more definitive proof of the existence of the Jerusalem property.

As to the Niagara account, the court found that the defendant had opened the account in 2008 in the plaintiff's name. The court, however, credited the defendant's testimony that, after making the initial deposit, the defendant had nothing further to do with the account and specifically found that "[a]s of the date of entry of the dissolution judgment, [the defendant] was not aware that the First Niagara account still existed. She first learned that the First Niagara account remained open when an escheat letter from the bank arrived at her office in November, 2011," which was after the judgment of dissolution. The plaintiff has not challenged the court's factual findings and, therefore, any claim that the defendant had prior knowledge of the account is simply untenable.

The plaintiff has not directed us to any language in the parties' separation agreement to support his contention that a party would be exempt from the duty to disclose an asset on his or her financial affidavit if the other party was aware of the existence of the asset. Moreover, the duty of full disclosure of assets was not solely for the benefit of the parties, but was also necessary for the court to evaluate the reasonableness of the parties' agreement and how much, if any, should be incorporated into the dissolution judgment. For all of these reasons, we reject the defendant's argument.

B

The plaintiff next argues that the undisclosed assets did not "have real importance or cause great consequences to the overall separation agreement of the parties." According to the plaintiff, the court improperly inflated the significance of the omissions by comparing their value to the total value of disclosed assets in the same asset category. The plaintiff argues that the court instead should have compared the value of the undisclosed assets against the value of the entire marital estate. The defendant responds that, regardless of the size of the estate, the nondisclosure of assets totaling $238,811 is a material omission. Although it is possible to imagine a marital estate so vast that the nondisclosure of over $200,000 in assets might be viewed as

nominal or de minimis and thus render the omission immaterial, this certainly is not that case. Accordingly, we find the plaintiff's argument unpersuasive.

The court found that, at the time of the dissolution of marriage, the fair market value of the Jerusalem property was $146,379 and that the balance in the Niagara account was $92,432. Thus, the total value of the undisclosed assets was $238,811. The court found that if the plaintiff had disclosed the Jerusalem property on his financial affidavit it "would have represented approximately 7.5 percent of the total real estate assets disclosed . . . ." Similarly, the court found that if the plaintiff properly had disclosed the Niagara account on his financial affidavits, "it would have represented 34 percent of the total value of bank accounts that he reported at that time." The plaintiff maintains that by only comparing the value of the undisclosed assets to the value of similar assets rather than to the value of the entire marital estate, which was approximately $16 million, the court inflated the significance of the undisclosed assets. Compared to the entire marital estate, the Jerusalem property and Niagara account together represented 1.5 percent, significantly less than the 7.5 percent and 34 percent calculations mentioned by the trial court.

Even if we agreed with the plaintiff that the court did not use the proper yardstick with which to measure the materiality of the omissions, we cannot conclude that the omission of assets valued at 1.5 percent of the marital estate was de minimis or immaterial. To suggest that the failure to disclose nearly $240,000 in assets would not have had great consequences to the overall separation agreement is to suggest that the defendant would have been content to walk away from her equitable share of those assets. We cannot reach that conclusion in the present case. The plaintiff does not challenge the trial court's valuation of the undisclosed assets, and we are not convinced that the trial court's discussion of the relative value of the assets rendered its overall determination that the plaintiff's nondisclosures were material omissions legally or logically incorrect or unsupported by the record.

### C

Finally, the plaintiff argues that it was improper for the court to find that his failure to disclose the Niagara account was a material omission because there was no evidence that the plaintiff knew of the Niagara account's existence at the time of the divorce.[12] The gravamen of the plaintiff's argument is that the court's finding that he had knowledge of the Niagara account, and thus had a duty to disclose it, is clearly erroneous because the defendant presented no evidence at the hearing establishing that bank account statements bearing his name were delivered to him rather than to the defendant's office to which they were addressed. We disagree that

the court's finding was clearly erroneous.

Both the defendant and her office manager testified that no bank statements were delivered to her office, and the court credited that testimony. It is true, as the plaintiff contends, that this, by itself, is not direct evidence that the statements were in fact delivered to the plaintiff.[13] Nevertheless, the account-opening document was admitted into evidence and lists the plaintiff as the account owner. The document contains the plaintiff's signature in two places. One of the signatures authorized the bank to "open one or more deposit accounts, as required, for the person or entity listed as the account owner on this card." The plaintiff acknowledges that the signatures are his. Accordingly, the plaintiff was aware at that time that a savings account was opened in his name, and he never sought to close the account. Even if he was not aware of the status of the account at the time of dissolution or the balance of the funds in the account, he could have, through the exercise of due diligence, determined such information and disclosed it on his financial affidavit. In sum, because there was evidence before the court to support its finding that the plaintiff knew about the Niagara account, the finding was not clearly erroneous.

II

The plaintiff next claims that the court improperly awarded the defendant statutory prejudgment interest because she requested prejudgment interest for the first time in her posthearing brief.[14] We disagree.

The following additional procedural history is relevant to this claim. In both her initial and amended motion to open, the defendant made the following request for relief: "the distribution of previously undisclosed property and an award to the defendant of her reasonable counsel fees and costs." She did not specifically request prejudgment interest at that time. In her posthearing brief, however, the defendant argued that she was entitled to prejudgment interest pursuant to General Statutes § 37-3a (a), which authorizes the court to award interest at a rate not to exceed 10 percent per year as damages for the unlawful retention of money.[15]

"The allowance of prejudgment interest as an element of damages is an equitable determination and a matter lying within the discretion of the trial court. . . . Before awarding interest, the trial court must ascertain whether [a party] has wrongfully detained money damages due [to another]. . . . Interest on such damages ordinarily begins to run from the time it is due and payable to the [party entitled to the damages]. . . . The determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than through the application of an arbitrary rule." (Internal quotation marks omitted.) *Blakeslee Arpaia Chapman*,

*Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 734–35, 687 A.2d 506 (1997).

"It is well established that interest need not be specially claimed in the demand for damages in order to recover." *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 36 n.39, 664 A.2d 719 (1995). In *Westport Taxi Service, Inc.*, our Supreme Court concluded that the plaintiff's claim for prejudgment interest properly was before the court because, although the plaintiff had not sought prejudgment interest in its complaint, it "clearly argued that it was entitled to prejudgment interest in its proposed posttrial findings of fact and conclusions of law, and in its posttrial memorandum of law." Id., 37. The Supreme Court further noted that the defendant had a meaningful opportunity to argue in its reply brief that prejudgment interest was not an appropriate remedy. Id.

Here, as in *Westport Taxi Service, Inc.*, the defendant raised her claim for prejudgment interest in her posthearing submission. The plaintiff had an opportunity to respond to that claim in his posthearing reply brief. Accordingly, we find no merit in the plaintiff's assertion that he was denied reasonable notice and an opportunity to present a defense regarding the request for prejudgment interest.

"[T]here is no statutory prohibition against awarding interest on a judgment in domestic relations cases . . . because the courts may fashion remedies that are appropriate and equitable . . . ." (Internal quotation marks omitted.) *Picton* v. *Picton*, 111 Conn. App. 143, 155, 958 A.2d 763 (2008), cert. denied, 290 Conn. 905, 962 A.2d 794 (2009). Given the court's determination that the plaintiff was unjustified in failing to disclose assets, which resulted in a failure to distribute to the defendant at the time of dissolution her equitable share of those assets under the separation agreement, an award of prejudgment interest properly was within the discretion of the court. Id., 155–56. Other than challenging the timing of the request, the plaintiff has raised no other claim regarding the court's exercise of its discretion to award prejudgment interest.

### III

Finally, we turn to the plaintiff's claim that the court violated the automatic appellate stay by awarding the defendant postjudgment interest after this appeal had been filed. Specifically, the plaintiff argues that the court's adjudication of the defendant's motion for an award of postjudgment interest amounted to a "proceeding to enforce or carry out the judgment" on the motion to open and, thus, was in violation of the automatic appellate stay as set forth in Practice Book § 61-11.[16] We disagree.

The following additional procedural history is relevant to this claim. On August 16, 2017, nine days after

the court rendered judgment on the defendant's motion to open and reform the dissolution judgment, the defendant filed a motion asking the court for an award of postjudgment interest, citing General Statutes §§ 37-3a[17] and 52-350f.[18] The plaintiff did not file an objection to the motion. The plaintiff filed his appeal from the court's judgment granting the motion to open on October 11, 2017. On January 16, 2018, the defendant filed a memorandum of law in support of her motion for an award of postjudgment interest. In her memorandum, the defendant argued that an award of postjudgment interest was authorized by statute and could be made during the pendency of an appeal without violating the automatic appellate stay because its purpose was to protect the interest of the prevailing party rather than to enforce or carry out the underlying judgment.

The court heard argument on the motion for postjudgment interest on February 26, 2018. The defendant argued that the court had awarded prejudgment interest at a rate of 5 percent and that that interest should continue to accrue at the same rate postjudgment because the defendant continued to be deprived of money that she was entitled to have received when her marriage was dissolved in 2011. The plaintiff took the position for the first time at oral argument that, because there was a pending appeal, any award of postjudgment interest at this time would be premature and in violation of the automatic stay. According to the plaintiff, the court was required to wait until the appeal was decided before adjudicating the defendant's motion.

On June 11, 2018, the court granted the defendant's motion and awarded postjudgment interest "at the rate of 5 percent per annum on the amounts that the plaintiff has been ordered to pay to the defendant from August 7, 2017, the date of the court's memorandum of decision." With respect to the automatic appellate stay, the court indicated that "the automatic stay does not bar a party from moving for interest on a judgment that is on appeal. While a party may not take action to collect a judgment while the automatic stay is in effect, nothing precludes a party from seeking an award of postjudgment interest while the appeal is pending." The plaintiff amended the appeal, challenging the court's decision to award postjudgment interest.

Ordinarily, we review a trial court's decision to award postjudgment interest for an abuse of discretion. See *Bower* v. *D'Onfro*, 45 Conn. App. 543, 550, 696 A.2d 1285 (1997). Here, however, the plaintiff's claim on appeal is that the court's award violated the automatic appellate stay, which raises a question of law over which our review is plenary. See *Deutsche Bank National Trust Co.* v. *Fraboni*, 182 Conn. App. 811, 821, 191 A.3d 247 (2018).

Practice Book § 61-11 (a) provides in relevant part: "Except where otherwise provided by statute or other

law, proceedings to enforce or carry out the judgment or order shall be automatically stayed until the time to file an appeal has expired. If an appeal is filed, such proceedings shall be stayed until the final determination of the cause. . . ."

"In this state, the filing of an appeal does not divest the trial court of jurisdiction or authority to continue to act in the matter on appeal. To the contrary, our Supreme Court has clarified on numerous occasions that trial courts in this state continue to have the power to conduct proceedings and to act on motions filed during the pendency of an appeal provided they take no action to enforce or carry out a judgment while an appellate stay is in effect. . . . [In other words] [t]he automatic stay prohibits only those actions that would *execute, effectuate, or give legal effect* to all or part of a judgment challenged on appeal." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *Ruiz* v. *Victory Properties, LLC*, 180 Conn. App. 818, 832–33, 184 A.3d 1254 (2018). The automatic appellate stay "merely denies [the successful litigant] the immediate fruits of his or her victory . . . in order to protect the full and unhampered exercise of the right to appellate review." (Citation omitted; internal quotation marks omitted.) *Preisner* v. *Aetna Casualty & Surety Co.*, 203 Conn. 407, 414, 525 A.2d 83 (1987).

The plaintiff's primary argument that the court's ruling violated the automatic stay provision of Practice Book § 61-11 derives from language in § 52-350f, which the defendant invoked in her motion seeking an award of postjudgment interest. The plaintiff notes that § 52-350f is titled "[e]nforcement of money judgment," and he highlights the following statutory language: "The money judgment may be *enforced*, by execution or by foreclosure of a real property lien, to the amount of the judgment with . . . interest as provided by chapter . . . 673 on the money judgment . . . ." (Emphasis added.) General Statutes § 52-350f. Section 37-3a is part of chapter 673 and, therefore, according to the plaintiff, an award of interest is part of the mechanism for the enforcement of a judgment and should be automatically stayed pursuant to Practice Book § 61-11 (a). We disagree.

Although § 52-350f authorizes the enforcement of a money judgment by either execution or by foreclosure of a real property lien, the defendant's motion for an award of postjudgment interest did not seek to pursue either form of relief. The clause in § 52-350f referring to statutory interest modifies the term "money judgment," merely clarifying that any interest awarded is included in the money judgment that may be enforced. No language in § 52-350f equates obtaining an award of interest with an action to enforce a money judgment, which is expressly limited in the statute to execution or foreclosure of a lien.

We conclude that the court was not prohibited by the automatic appellate stay from ruling on the defendant's motion for postjudgment interest because its decision to grant the motion and to award the defendant an additional measure of damages cannot reasonably be viewed as effectuating the judgment on appeal. The plaintiff was able to amend the present appeal to challenge the additional award, and the decision in no way diminished or hampered his appellate rights with respect to the remainder of the court's judgment on the motion to open. Although the effect of the court's decision was to increase the damages the defendant would be entitled to collect if she successfully defended against the appeal, she nevertheless continues to be denied the fruits of her victory because she will be unable to secure payment from the plaintiff by executing on the judgment until the appeal is disposed and the automatic stay has expired.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant formerly was known as Michele Brown Lavy.

[2] The court made the following findings with respect to the title abstract: "The title abstract reflects [the plaintiff's] Israeli identification number. The signatures on the title abstract are not dated. [The plaintiff] was in Israel in 1998, about six months before the title abstract was recorded. He was not in Israel on January 27, 1999, the date of recording."

[3] Hacohen did not testify at the hearing, but portions of his deposition testimony were read into the record.

[4] Specifically, Hacohen opined that a number of documents must be signed by the grantee in connection with a conveyance for no consideration in Israel, including an agreement between the parties, an affidavit, a transfer deed, and a tax declaration, before the conveyance is recorded. He further explained that conveyance taxes at a reduced rate are required to be paid on a sale of property for no consideration between relatives.

[5] The court noted that, in his financial affidavit, the plaintiff had disclosed the following real estate assets that he owned jointly with the defendant: the parties' marital residence in Westport, in which the parties had equity of $1,351,577; an apartment in Umbria, Italy, having an appraised value of $230,296; and an unimproved lot in Vieques, Puerto Rico, having an appraised value of $234,000.

[6] In crafting its remedial orders, the court utilized $92,432 as the value of the Niagara account as of the date of dissolution on June 14, 2011. Neither party challenges that finding on appeal.

After the defendant filed the amended motion to open indicating that the plaintiff had failed to disclose the Niagara account, the plaintiff withdrew all of the funds from the account and closed it, transferring the money to another account.

[7] The plaintiff disclosed on his June 14, 2011 financial affidavit three savings accounts with a combined balance of $60,224 and two checking accounts with a combined balance of $119,695.

[8] The defendant, who was concerned about bank failures during the 2008 financial crisis, apparently had transferred money from her practice into several different bank accounts, keeping the amount deposited in each account below the maximum amount insured by the Federal Deposit Insurance Corporation.

[9] In addition, the plaintiff argues that the court improperly failed to consider whether the defendant's failure to disclose her alleged knowledge of the assets prior to dissolution was itself a violation of a duty to disclose. The plaintiff takes the position that the principles of full and frank disclosure that our Supreme Court espoused in *Billington* v. *Billington*, 220 Conn. 212, 595 A.2d 1377 (1991), which we will discuss in this opinion, should not be limited to disclosures on financial affidavits but also include a duty of overall honesty in negotiating a settlement agreement. According to the plaintiff, the defendant proceeded in bad faith because, rather than disclosing

her knowledge of the Niagara account and Jerusalem property prior to judgment, she negotiated terms in the settlement agreement with the intention of invoking those terms to her advantage postjudgment. The plaintiff asserts that the current postjudgment litigation would have been unnecessary if the defendant had made inquiry about the undisclosed assets prior to the divorce judgment.

Because we conclude that the record does not support the factual underpinning of the plaintiff's argument—namely, that the defendant knew of the undisclosed assets prior to dissolution—we do not decide whether such knowledge would have imparted any affirmative duty on the part of the defendant to disclose her knowledge to the plaintiff or whether a breach of that purported duty would have had any bearing on the plaintiff's separate and distinct obligation under the separation agreement and rules of practice to disclose all material assets that he owned on his financial affidavit. We nevertheless note that, at least in the context of fraud allegations, our courts have abandoned any requirement that spouses have an obligation to investigate one another's finances in order to prevent fraud through nondisclosure, which arguably would also militate against recognizing a duty to disclose knowledge of the other spouse's assets. See id., 220.

[10] The parties do not dispute that paragraph 21.1 of their agreement provides that "[i]n the event of a *material omission* or misstatement by either party in his or her affidavit," the other party would be entitled to the relief specified in paragraph 21.2 of the separation agreement. (Emphasis added.) Courts often consult dictionaries in considering the plain and ordinary meanings of words used in separation agreements and other contracts. See *Nation-Bailey* v. *Bailey*, 316 Conn. 182, 193, 112 A.3d 144 (2015). Something is "material" if it has "real importance or great consequences"; Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 765; and a "material omission" is defined in Black's Law Dictionary as "[a]n omission that significantly affects a person's decision-making." Black's Law Dictionary (10th Ed. 2014) p. 1261. The plaintiff does not argue that the terms of the separation agreement are ambiguous, nor has he directed our attention to anything in the record indicating that the court departed from the usual and ordinary meaning of the phrase "material omission." Rather than raising an issue of construction, the plaintiff challenges the court's application of the term "material omission" to the underlying facts. This presents a mixed question of law and fact. Accordingly, our review is limited to whether the court's determination that the plaintiff's nondisclosures were material omissions was legally and logically correct and supported by the evidence. See *Crews* v. *Crews*, 295 Conn. 153, 162–63, 989 A.2d 1060 (2010).

[11] A get is, "[u]nder Jewish law, a document signed by a rabbi to grant a divorce." Black's Law Dictionary (10th Ed. 2014) p. 803.

[12] The defendant's motion to open was not premised on an allegation of common-law fraud but rather on the plaintiff's breach of his contractual duty under the separation agreement to disclose all assets, liabilities, and income. Although it is an element of fraud that a party make a statement that is both "untrue and *known to be so by its maker*"; (emphasis added; internal quotation marks omitted) *Sousa* v. *Sousa*, 173 Conn. App. 755, 765, 164 A.3d 702, cert. denied, 327 Conn. 906, 170 A.3d 2 (2017); the separation agreement contains no equivalent scienter requirement applicable to determining whether one of the parties made a material omission from his or her financial affidavit. Rather, the parties' agreement places the burden of a failure to disclose, regardless of whether that failure is knowing, negligent or otherwise, upon the owner of the asset. In other words, under the terms of the separation agreement, an omission arguably need only be found "material," not knowingly made, in order to trigger the remedy of rescission and reformation of the financial orders. Nevertheless, because we determine that the court's finding that the plaintiff knew about the Niagara account was not clearly erroneous, we need not resolve this issue.

[13] The court noted in its memorandum of decision that the defendant's counsel suggested that the postal carrier may have delivered the statements to the plaintiff's office because his name was on the statements and his office was only two blocks away. The defendant, however, offered no admissible evidence that this had occurred, and the plaintiff is correct that arguments of counsel are not evidence. See *Lucas* v. *Lucas*, 88 Conn. App. 246, 260, 869 A.2d 239 (2005). What the plaintiff ignores, however, is the other evidence tending to demonstrate that the plaintiff was aware or should have been aware of the Niagara account. It is therefore unnecessary for us to resolve whether the court reasonably could have inferred from circumstantial evidence that the banking statements and other documents relating to the

account were more likely than not delivered to the plaintiff.

[14] The plaintiff does not argue on appeal that the court lacked the authority to award prejudgment interest or that the court awarded interest back to an incorrect date.

[15] General Statutes § 37-3a (a) provides in relevant part: "Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ."

Our Supreme Court has explained that "the primary purpose of § 37-3a . . . is not to punish persons who have detained money owed to others in bad faith but, rather, to compensate parties that have been deprived of the use of their money." *Sosin* v. *Sosin*, 300 Conn. 205, 230, 14 A.3d 307 (2011). An award of interest under § 37-3a is discretionary; id., 228; and 10 percent is "the maximum rate of interest that a trial court, in its discretion, can award"; *Gianetti* v. *Meszoros*, 268 Conn. 424, 426, 844 A.2d 851 (2004); meaning the court, as in the present case, has the discretion to set a lower rate of interest. See *Sears, Roebuck & Co.* v. *Board of Tax Review*, 241 Conn. 749, 764–66, 699 A.2d 81 (1997).

[16] The plaintiff also claims that, because the award of postjudgment interest was premised on the damages awarded in the August 7, 2017 ruling on the motion to open, we should reverse the award of postjudgment interest on the basis of the claims challenging that decision. Because we rejected those claims in parts I and II of this opinion, we do not reach this additional claim.

[17] See footnote 15 of this opinion. Interest under § 37-3a, which is awarded as compensation for the detention of money, "may include either or both prejudgment and postjudgment interest." See *Sikorsky Financial Credit Union, Inc.* v. *Butts*, 315 Conn. 433, 442, 108 A.3d 228 (2015).

[18] General Statutes § 52-350f provides: "A money judgment may be enforced against any property of the judgment debtor unless the property is exempt from application to the satisfaction of the judgment under section 52-352a, 52-352b, 52-352d or 52-361a, or any other provision of the general statutes or federal law. The money judgment may be enforced, by execution or by foreclosure of a real property lien, to the amount of the money judgment with (1) all statutory costs and fees as provided by the general statutes, (2) interest as provided by chapter 673 on the money judgment and on the costs incurred in obtaining the judgment, and (3) any attorney's fees allowed pursuant to section 52-400c."