******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## MERCEDES-BENZ FINANCIAL *v.* 1188 STRATFORD AVENUE, LLC, ET AL.
## (AC 43463)

Bright, C. J., and Prescott and Moll, Js.

*Syllabus*

The plaintiff financing company sought to recover damages from the defendants, a limited liability company and its principal, for the defendants' alleged failure to make payments due under a motor vehicle lease agreement. After the defendants were defaulted for failure to appear, the trial court granted the plaintiff's motion for judgment and rendered judgment for the plaintiff. Thereafter, the court denied the defendants' motion to open and to set aside the default judgment, and the defendants appealed to this court, claiming that the trial court abused its discretion by denying their motion to open and denying their oral request to continue the hearing on the motion to allow them to present testimony and evidence in support of the motion. *Held*:

1. The trial court did not abuse its discretion in denying the defendants' motion to open and to set aside the default judgment: although the court improperly determined that the motion to open was untimely, the court reasonably considered the merits of the motion and determined that the motion had no basis, as the defendants, who were aware of the pending action but failed to take any action in response, were not prevented from appearing as a result of mistake, accident or other reasonable cause; moreover, neither the motion nor the attached affidavit made any reference to an alleged representation that the plaintiff would not be pursuing the action, which the defendants' counsel raised for the first time during the hearing on the motion.

2. The trial court did not abuse its discretion in denying the defendants' oral request to continue the hearing on their motion to open the judgment, the defendants having failed in the affidavit attached to their motion to set forth adequately the reason why they failed to appear; moreover, the defendants had requested only oral argument and not an evidentiary hearing, and the court was not required to continue the matter to allow the defendants to present testimony in support of a claim that was not raised in their motion to open.

(*One judge dissenting*)

Argued May 9—officially released July 19, 2022

*Procedural History*

Action to recover damages for breach of contract, and for other relief, brought to the Superior Court in the judicial district of Ansonia-Milford, where the defendants were defaulted for failure to appear; thereafter, the court, *Hon. Arthur A. Hiller*, judge trial referee, granted the plaintiff's motion for judgment and rendered judgment for the plaintiff; subsequently, the court denied the defendants' motion to open and set aside the default judgment, and the defendants appealed to this court. *Affirmed.*

*Daniel D. Skuret III*, with whom was *Patrick D. Skuret*, for the appellants (defendants).

*Gary Greene*, for the appellee (plaintiff).

*Opinion*

BRIGHT, C. J. The defendants, Aniello Dizenzo and his company, 1188 Stratford Avenue, LLC (company), appeal from the judgment of the trial court denying their motion to open the default judgment rendered in favor of the plaintiff, Mercedes-Benz Financial. The defendants claim that the court abused its discretion by denying their (1) motion to open and (2) oral request to continue the hearing on the motion to allow the defendants to present testimony and evidence in support of it. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. In 2012, Dizenzo, on behalf of his company, entered into a motor vehicle lease agreement (agreement) with a dealership in Fairfield for a 2013 Mercedes-Benz (vehicle). Dizenzo signed the agreement on behalf of his company and also in his individual capacity as guarantor. The dealership assigned its rights under the agreement to the plaintiff. In January, 2017, the plaintiff brought the underlying action against the defendants alleging that the defendants had failed to make the payments due under the agreement. The return date was February 28, 2017, but neither defendant filed an appearance.

On September 1, 2017, the trial court clerk granted the plaintiff's motion for default for failure to appear as to both defendants. On September 1, 2019, more than one year after the default had entered, the plaintiff filed a motion for judgment and order of weekly payments. On May 13, 2019, the court granted the motion, rendering judgment for the plaintiff in the amount of $11,734.61 and awarding the plaintiff postjudgment interest at the annual rate of 8 percent pursuant to General Statutes § 37-3a.[1] The court ordered the defendants to make weekly payments in the amount of $35. On May 28, 2019, the plaintiff sent a notice of judgment to the defendants.

On July 29, 2019, the defendants filed a motion to open the judgment pursuant to General Statutes (Rev. to 2019) § 52-212.[2] In that motion, the defendants asserted that the vehicle "had serious defects" and required repairs that would have taken several months to complete. As a result, the defendants told the dealership that, because the vehicle did not function properly, "the lease was void and they left the [vehicle] with the dealer[ship]." The defendants claimed that, although they were aware of the lawsuit in 2017, they "mistakenly thought [it] was resolved and did not hear anything else until June of 2019, when [they] received notice of judgment." They further claimed that they "ha[d] good defenses to the plaintiff's claim based upon breach of warranties and misrepresentations and w[ould] file a counterclaim . . . when the judgment is set aside." Dizenzo repeated these claims in an affidavit, which was filed with the motion. The plaintiff filed an objection

to the motion, claiming that the defendants failed to establish good cause for their failure to appear and that the "[d]efendants' purported defenses and [counter]claims arise from the alleged acts of the dealership, not the plaintiff financing company."

On August 9, 2019, the defendants filed a caseflow request in which they requested oral argument "[t]o explain [the] motion to open judgment . . . and the reasons why the court should grant it." On August 13, 2019, the defendants filed a notice of intention to appear and argue and request for oral argument, requesting "permission to appear and . . . explain the defenses and the reasons why the court should grant the motion . . . ." On September 16, 2019, the court held a hearing on the motion. At the hearing, the court initially thought that judgment had entered in 2017. After the courtroom clerk informed the court that judgment had entered on May 13, 2019, the following exchange occurred:

"The Court: May, June, July, August, September. We are more than four months?

"[The Defendants' Counsel]: No. We . . . filed within time, Your Honor. And you know I asked that this be heard back in August with—

"The Court: All right. So we are barely in time. Tell me; you were served properly, correct?

"[The Defendants' Counsel]: I believe the defendants were served properly.

"The Court: Okay. So 2017.

"[The Defendants' Counsel]: Yes.

"The Court: Versus 2019, with nothing happening—

"[The Defendants' Counsel]: That's right. They didn't—

"The Court: —after being served.

"[The Defendants' Counsel]: Well, it's not that nothing has happened, Your Honor. What, in effect, happened was he contacted [Mercedes-Benz] after that period of time and was told the fact that they weren't going to go forward.

"The Court: Is your client here to testify?

"[The Defendants' Counsel]: Well, what I will do is— I thought this was oral argument. But if you want testimony, we can bring him in.

"The Court: No. No. This is your motion to open. Why should I rely on a pleading [or] a story that there was an agreement, supposedly, and that's why you didn't bother doing anything, when I don't even have an affidavit?

"[The Defendants' Counsel]: You do have an affidavit.

"The Court: To that effect?

"[The Defendants' Counsel]: You have an affidavit.

"The Court: Okay. All right. All right. But was the affidavit cross-examined? Do I have witnesses on the other side? Do we have time for a hearing? Do we have—are we ready for evidence?

"[The Defendants' Counsel]: You know, Your Honor, I thought this was for oral argument, and I'm sorry. It's my fault. And what I will do is if Your Honor just continues the argument to next week, I'm sure what can happen is that we can bring him forward.

"The Court: And even if you bring him in—Counsel, do you agree there was an agreement not to do anything?

"[The Plaintiff's Counsel]: Absolutely not. And it flies in the face of their own affidavit. Their affidavit articulates that they didn't get the satisfaction they wanted. And they turned around and just left the car with a dealer and said we'll go elsewhere. I mean that's the fair reading of their affidavit.

"[The Defendants' Counsel]: That's not the fair reading.

"[The Plaintiff's Counsel]: More importantly, these defenses, A, are probably time barred because the lease was entered into in November of 2012. And more importantly than that, how do you hold the financing entity culpable for defects in the product you used its money to buy? . . . You go after the dealer. These are Lemon Law type of allegations. We had a lousy car. It didn't work. It had this problem; it had that problem. But Mercedes-Benz Financial had nothing to do with that. They were not the dealer of the car. They were not the owner of the car. They didn't sell the car or lease the car to the defendant[s]. . . .

"[The Defendants' Counsel]: That's not true. . . . I have a copy of the lease. May I show it to Your Honor?

"The Court: Tell me what it says.

"[The Defendants' Counsel]: It says Mercedes-Benz Financial Services.

"The Court: Is the lessor?

"[The Defendants' Counsel]: It says Mercedes-Benz Financial Services, and it's a first class lease. And basically, it's all over here about Mercedes-Benz Financial Services. And what had, in fact, happened was there's a breach of actual contract. There's a breach with regard to the warranties. It's a violation of the Lemon Law. And basically, he was told the fact that they weren't going to do anything with it. He left the car there because the car was not operable, and he didn't want to actually get anybody injured.

"You know it's a situation where all he wants to do is get his day in court. And he is sorry that this thing

didn't actually—he didn't actually move faster with regard to this; that's all. It's very simple. And all we'd like to do is we would like to reopen the judgment; do some discovery with it; file a counterclaim. . . . This two year period of time is very important, actually, to the plaintiff as he is talking. But it is also very important to us because the fact that they did nothing, which is sort of—which shows the fact that when [Dizenzo] talked to them, they weren't going to go forward with regard to the file. Then all of a sudden, this happened.

"The Court: Has he got anything in writing, any communication at all, saying we're not going forward; we are not going to bother you? Anything at all aside from your word or his word? Everybody knows what an e-mail is. There isn't a human being in this country who doesn't know you put things in writing.

"[The Defendants' Counsel]: Well, you are not talking with a person that uses e-mail all of the time, Your Honor. You're talking with a—

"The Court: That's you. How about your client?

"[The Defendants' Counsel]: The client is the same way, and Attorney D.J. Skuret can attest to that. You know my client is around my age, so it's not like he's computer literate so that is not going to happen. All we are doing is we're looking for our day in court, Your Honor; that's all.

"[The Plaintiff's Counsel]: Your Honor, please.

"[The Defendants' Counsel]: And Your Honor has been very fair with regard to the other people that have appeared before Your Honor today. All we are looking for is fairness in getting this set aside so we can go forward with regard to discovery.

"The Court: Your client is savvy enough to have himself an LLC. I bet you he knows what an e-mail is.

"[The Defendants' Counsel]: I think he knows what an e-mail is, but I don't think he's savvy enough to have a—to do e-mail. So with regard to having an—

"The Court: He's got a corporation. Is he smart enough to set up a corporation?

"[The Defendants' Counsel]: I don't think he set up any corporation. I—

"The Court: What's the LLC?

"[The Defendants' Counsel]: The corporation is a limited liability company.

"The Court: I understand. That's a corporation.

"[The Defendants' Counsel]: But I don't think he set it up. He's not savvy enough to set it up. The man was a mechanic, mechanic.

"The Court: Who set it up for him? Who signed the papers?

"[The Defendants' Counsel]: I'll go and I'll check. I didn't know it would be necessary to have it here today.

"The Court: All right. Counsel?

"[The Plaintiff's Counsel]: Yes, Your Honor. May I? Counsel filed an affidavit. And I think it's very illuminating because the affidavit paragraph 5, the dealer represented to me; paragraph 6, the dealer told me. He is talking about a separate entity. Mercedes-Benz Financial is not the dealer.

"The Court: Correct—

"[The Plaintiff's Counsel]: All of these alleged counterclaims—

"The Court: Correct, counsel? Your affidavit only says the dealer did all of these things. The plaintiff here is not the dealer.

"[The Defendants' Counsel]: Well, let me say this . . . Your Honor. The fact that, number one, with regard to the LLC, it is set up with regard to my client's house, and it's a—

"The Court: No. No, the dealer. Your affidavit says the dealer promised; the dealer made an agreement. It doesn't say anything about the plaintiff.

"[The Defendants' Counsel]: Well, as I indicated to Your Honor, and actually if Your Honor wants—what I can do is I don't have another copy of this, but I do have actually the first class lease. And it's a situation where [Dizenzo] was told the fact that [the plaintiff was not] going forward [with the case]. They waited over two years.

"The Court: But your affidavit tells me it was the dealer who did that.

"[The Defendants' Counsel]: Well, I'm sorry, Your Honor. It was more than the dealer. It was actually it was Mercedes-Benz Financial. Whenever he called, they told him the fact that it wasn't going to go forward. And they waited two years to do it, which is proof [of] the fact that they didn't.

"The Court: That's not proof of anything.

"[The Defendants' Counsel]: Well, it is. The fact that they sat on their—they sat with regard to doing it because of the fact that—he was told the fact that they weren't going forward.

"The Court: Yes, counsel?

"[The Plaintiff's Counsel]: Well, Your Honor, I have to assume that this affidavit was vetted and probably drafted by [the] defendants' counsel. And it was based on communications based—articulated to him by his client; not the LLC, but the principal in the LLC. And he wouldn't file an affidavit in court that was misleading or inappropriate. And as I said—

"The Court: Anything else, counsel?

"[The Defendants' Counsel]: I'm sorry. I didn't hear that.

"The Court: Anything else?

"[The Defendants' Counsel]: Yes, there is. If this is a question with regard to who he spoke to, then I'm sorry that I didn't bring the client here today. But I will have him available if Your Honor would just continue it for a week.

"The Court: [I am] going to deny the motion to open. It's untimely and it has no basis." The court also issued a written order denying the motion, which stated: "Motion is untimely with no basis." This appeal followed.

I

The defendants first claim that the court abused its discretion in denying their motion to open the judgment because they filed the motion within four months after the judgment was rendered and because they satisfied both prongs of the standard governing the opening of default judgments. The plaintiff agrees that the defendants' motion was filed timely but argues that the defendants failed to establish that they were "prevented by mistake, accident or other reasonable cause" from appearing and raising their defenses and counterclaims. We agree with the plaintiff.

We begin with the applicable standard of review and controlling legal principles. "A motion to open . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did. . . .

"To open a judgment pursuant to Practice Book § 17-43 (a)[3] and . . . § 52-212 (a), the movant must make a two part showing that (1) a good defense existed at the time an adverse judgment was rendered; and (2) the defense was not at that time raised by reason of mistake, accident or other reasonable cause. . . . The party moving to open a default judgment must not only allege, but also make a showing sufficient to satisfy the two-pronged test [governing the opening of default judgments]. . . . The negligence of a party or his counsel is insufficient for purposes of § 52-212 to set aside a default judgment. . . . Finally, because the movant must satisfy both prongs of this analysis, failure to meet either prong is fatal to [the] motion." (Footnote added; internal quotation marks omitted.) *Little* v. *Mackeyboy Auto, LLC*, 142 Conn. App. 14, 18–19, 62 A.3d 1164

(2013).

In the present case, the court denied the motion to open, stating: "It's untimely and it has no basis." We agree with the defendants that the court improperly determined that the motion to open was untimely. The defendants filed the motion on July 29, 2019, seventy-seven days after the judgment was rendered on May 13, 2019, which was well within the four month period under § 52-212 (a). Nevertheless, because the court also denied the motion on the ground that "it ha[d] no basis," we conclude that the court properly denied the motion to open.

The defendants contend that the court did not reach the merits of their motion to open because it determined that the motion was untimely.[4] In their principal brief, they repeatedly claim that, "[i]f the court had not erroneously determined that the motion to open judgment was untimely filed and simply stopped its inquiry, the defendants would have been able to show the court that it met the two-prong test for opening the judgment." In addition, at oral argument before this court, the defendants' counsel asserted that he understood the court's order as finding that the motion was untimely and that there was no basis for filing the motion late. This construction of the court's judgment is belied by the record.

Specifically, after the clerk told the court that judgment had been rendered on May 13, 2019, the court proceeded to ask a series of questions regarding the merits of the motion to open. More specifically, the court questioned the defendants' counsel regarding the second prong of the standard governing motions to open—the reasonable cause for the defendants' failure to appear and to defend the action. The court first sought to determine whether the defendants had been served properly, which the defendants' counsel conceded, stating that he "believe[d] they were served properly." When counsel explained that the defendants did not appear because Dizenzo had been told by the dealership that they were not pursuing the action—an explanation not stated in either the motion to open or Dizenzo's affidavit—the court asked whether the defendants had any documentary evidence of such an agreement. Given the court's questions during the hearing, we are persuaded that the court considered the merits of the defendants' motion and concluded that the motion "ha[d] no basis." In other words, the court concluded that the defendants were not prevented from appearing as a result of "mistake, accident or other reasonable cause." General Statutes (Rev. to 2019) § 52-212 (a); Practice Book § 17-43 (a).

As to the merits of their motion to open, the defendants argue: "On multiple occasions the defendants contacted the lessor after that period of time and were told the fact that they were not going to go forward as

the motor vehicle had been returned. Based upon these representations, the defendants did not hire an attorney or file an appearance in the case. The defendants relied on these representations and thus believed that this matter was resolved. The defendants did not hear anything else for over two . . . years until June of 2019, when they received the notice of judgment. Nor did the plaintiff pursue anything in the matter for over two . . . years, which further supports the defendants' understanding that this matter had been resolved."

We again note that the defendants' motion to open and Dizenzo's accompanying affidavit are devoid of any reference to the alleged representations made by either the dealership or the plaintiff as to the continuation of the lawsuit. In each of those documents, with regard to the defendants' failure to appear, the defendants stated: "The defendants . . . when they were sued in 2017, *mistakenly thought this matter was resolved* and did not hear anything else until . . . [they] received notice of judgment."[5] (Emphasis added.) Such an explanation is insufficient under § 52-212 (a) because "a defendant's negligence does not constitute reasonable cause for failing to appear . . . ." *Disturco* v. *Gates in New Canaan, LLC*, 204 Conn. App. 526, 533–34, 253 A.3d 1033 (2021). As this court has explained, § 52-212 (a) "is remedial, but it cannot be so construed as to authorize relief . . . where a defendant indeed has received proper notice of the underlying action and the plaintiff's motion for default yet failed to file an appearance." (Citation omitted; internal quotation marks omitted.) Id., 535.

This court's decision in *Berzins* v. *Berzins*, 105 Conn. App. 648, 938 A.2d 1281, cert. denied, 289 Conn. 932, 958 A.2d 156 (2008), is instructive. In *Berzins*, the defendant moved to open a judgment of dissolution rendered on his default for failure to appear; id., 649; claiming "that after being served, the plaintiff informed him that she had withdrawn the action and no longer wanted to proceed." Id., 651. The trial court denied the motion to open, finding that the defendant had been served properly but "simply chose not to appear." Id., 652. The court noted that, assuming that the defendant had relied on such a representation by the plaintiff, "his subsequent negligence supersede[d] his purported reliance on the plaintiff's actions." (Internal quotation marks omitted.) Id. On appeal, this court affirmed the judgment, explaining that "[t]he defendant was served with notice of this action and did nothing. Had he filed an appearance, he would have received notice of the [scheduled] hearing . . . . The court correctly concluded that the defendant's inaction in this case was nothing short of complete and utter negligence." (Internal quotation marks omitted.) Id., 653.

In the present case, as in *Berzins*, the defendants were served with notice of the action and claimed that

they failed to appear because, according to their counsel, they relied on an alleged representation that the plaintiff would not pursue the action. Just as the defendant's inaction in *Berzins* constituted "complete and utter negligence"; (internal quotation marks omitted) id.; so too does the defendants' inaction in the present case. The defendants were aware of the pending action but failed to take any action in response. Furthermore, as we noted previously, neither the defendants' motion nor Dizenzo's affidavit made any reference to the alleged representation that their counsel raised for the first time during the hearing on the motion to open. Consequently, because the reason given for the defendants' failure to appear did not constitute reasonable cause for such failure, we conclude that the court did not abuse its discretion when it denied the motion to open as being without basis.

## II

The defendants next claim that the court abused its discretion by "denying the defendants an evidentiary hearing and [by] denying the[ir] request for a continuance of one . . . week to allow the defendants to be present to provide the court with testimony and evidence in support of the motion to open judgment." We are not persuaded.

"Appellate review of a trial court's denial of a motion for a continuance is governed by an abuse of discretion standard that, although not unreviewable, affords the trial court broad discretion in matters of continuances. . . . An abuse of discretion must be proven by the appellant by showing that the denial of the continuance was unreasonable or arbitrary." (Internal quotation marks omitted.) *Bevilacqua* v. *Bevilacqua*, 201 Conn. App. 261, 268, 242 A.3d 542 (2020). Likewise, "unless otherwise required by statute, a rule of practice or a rule of evidence, whether to conduct an evidentiary hearing generally is a matter that rests within the sound discretion of the trial court." (Internal quotation marks omitted.) *DeRose* v. *Jason Robert's, Inc.*, 191 Conn. App. 781, 797, 216 A.3d 699, cert. denied, 333 Conn. 934, 218 A.3d 593 (2019).

In the present case, the defendants do not claim that an evidentiary hearing was required by a statute, rule of practice, or rule of evidence. Instead, they argue that the court, by failing to allow the defendants to present testimony and submit evidence, "did not properly assess [their] claimed defenses and the reasons for not presenting them as required by the two step process." The defendants further argue that "[i]t was necessary for the court to hold an evidentiary hearing as the plaintiff never provided to the court a legible copy of the claimed lease agreement."

At the outset, we note that, in each of the caseflow requests filed by the defendants, they requested only

oral argument—not an evidentiary hearing. It was only after the court asked whether Dizenzo was present to testify as to the plaintiff's alleged representation that it would not pursue the lawsuit that the defendants' counsel requested that the matter be continued in order to present testimony. Moreover, as previously noted, although the defendants' counsel explained that Dizenzo had been told that the plaintiff would not pursue the lawsuit, this explanation was not presented in either their motion to open or the accompanying affidavit. Section 52-212 (c) requires that a written motion to open "shall be verified by the oath of the complainant or his attorney, shall state in general terms the nature of the claim or defense and *shall particularly set forth the reason why the plaintiff or defendant failed to appear.*" (Emphasis added.) Dizenzo's affidavit failed to provide the detail called for by the statute as to why the defendants failed to appear and certainly did not set forth the claim that the defendants' counsel made at oral argument before the trial court. The statute does not contemplate that a party can file a deficient verified statement and then insist on an evidentiary hearing to correct deficiencies noted by the court. The defendants failed to meet their statutory burden under § 52-212, and the court did not abuse its discretion by refusing to continue the matter to allow the defendants to present testimony in support of a claim that was never raised in their motion to open.

The judgment is affirmed.

In this opinion, MOLL, J., concurred.

[1] General Statutes § 37-3a (a) provides in relevant part: "Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ."

"An award of interest under § 37-3a is discretionary . . . and 10 percent is the maximum rate of interest that a trial court, in its discretion, can award . . . meaning the court, as in the present case, has the discretion to set a lower rate of interest." (Citations omitted; internal quotation marks omitted.) *Lavy* v. *Lavy*, 190 Conn. App. 186, 208 n.15, 210 A.3d 98 (2019).

[2] General Statutes (Rev. to 2019) § 52-212 provides in relevant part: "(a) Any judgment rendered . . . upon a default . . . may be set aside, within four months following the date on which it was rendered . . .  and the case reinstated on the docket . . . upon the . . . written motion of any party . . . prejudiced thereby, showing reasonable cause, or that a good . . . defense in whole or in part existed at the time of the rendition of the judgment . . . and that the . . . defendant was prevented by mistake, accident or other reasonable cause from . . . making the defense. . . .

"(c) The . . . written motion shall be verified by the oath of the complainant or his attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the . . . defendant failed to appear. . . ."

All references herein to § 52-212 are to the 2019 revision of the statute.

[3] Practice Book § 17-43 (a), which mirrors § 52-212 (a), provides in relevant part: "Any judgment rendered . . . upon a default . . . may be set aside within four months succeeding the date on which notice was sent . . . upon the written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good . . . defense in whole or in part existed at the time of the rendition of such judgment . . . and that . . . the defendant was prevented by mistake, accident or other reasonable cause from prosecuting or appearing to make the same. Such written motion shall be verified by the oath of the complainant or the complainant's attorney, shall state in general terms the nature of the claim or defense and shall particularly

set forth the reason why the plaintiff or the defendant failed to appear. . . .”

[4] We note that “[t]he statutory limitation imposed on motions to open judgments does not implicate the court's jurisdiction. Rather, our Supreme Court has explained that General Statutes § 52-212a operates as a constraint, not on the trial court's jurisdictional authority, but on its substantive authority to adjudicate the merits of the case before it.” (Footnote omitted; internal quotation marks omitted.) *710 Long Ridge Operating Co. II, LLC* v. *Stebbins*, 153 Conn. App. 288, 295, 101 A.3d 292 (2014).

[5] Dizenzo's affidavit stated: “The defendant, [Dizenzo], when he was sued in 2017, mistakenly thought this matter was resolved and did not hear anything until . . . when he received notice of judgment.”